1    JAMES J. BROSNAHAN (CA SBN 34555)
      JBrosnahan@mofo.com
2    JUDSON E. LOBDELL (CA SBN 146041)
      JLobdell@mofo.com
3    MORRISON & FOERSTER LLP
      425 Market Street
4    San Francisco, California  94105-2482
      Telephone: 415.268.7000
5
      JAMES W. HUSTON (CA SBN 115596)
6    JHuston@mofo.com
      MORRISON & FOERSTER LLP
7    12531 High Bluff Drive, Suite 100
      San Diego, California  92130-2040
8    Telephone: 858.720.5100
      Facsimile: 858.720.5125
9
      Attorneys for Defendant
10   LUCASFILM LTD.

11

12                     UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15   RAND INTERNATIONAL, INC.,              Case No. CV-08 -3897-JSW

16                 Plaintiff,               **DECLARATION OF TOM E. BEYER IN
                                            SUPPORT OF DEFENDANT'S
17          v.                              OPPOSITION TO PLAINTIFF'S
                                            EX PARTE APPLICATION FOR
18   LUCASFILM LTD.,                        TEMPORARY RESTRAINING ORDER**

19                 Defendant.               Date:      August 22, 2008
                                            Time:      9:00 a.m.
20                                          Ctrm:      2
                                            Judge:     Hon. Jeffrey S. White
21

22

23

24

25

26

27

28

1    I, TOM E. BEYER, HEREBY DECLARE AS FOLLOWS:

2        1.    I am paralegal with Morrison and Foerster LLP, counsel for Defendant Lucasfilm

3    Ltd. in the above-captioned matter.  I submit this declaration in support of Defendant's

4    Opposition To Plaintiff's Ex Parte Application For Temporary Restraining Order.  Except for any

5    matters stated on information and belief, of which I am informed and I believe are true, I have

6    personal knowledge of the facts stated below.  If called as a witness in this action, I could and

7    would testify competently as to those facts.

8        2.    On August 17, 2008, I went to Wal-Mart located at 1400 Hilltop Mall Road in

9    San Pablo, California.

10       3.    At the Wal-Mart, I purchased a Rand International STAR WARS Quad for $70.30,

11   inclusive of tax.

12       4.    On August 17, 2008, while inside Wal-Mart, I photographed the STAR WARS

13   Quads offered for sale.

14       5.    Attached hereto as Exhibit 1 are true and correct copies of the photographs of the

15   purchased STAR WARS Quad.

16       6.    Attached hereto as Exhibit 2 is a true and correct copy of the receipt for the

17   purchase of the STAR WARS Quad.

18       7.    Attached hereto as Exhibit 3 is a true and correct copy of a press release from the

19   Consumer Product Safety Commission entitled "CPSC, Rand International Announce Recall of

20   Bicycle Helmets," dated July 5, 2000.

21       8.    Attached hereto as Exhibit 4 is a true and correct copy of a press release from the

22   Consumer Product Safety Commission entitled "CPSC, Rand/Ross Bicycle Co. Announce Recall

23   to Repair Mountain Bikes," dated April 27, 1998.

24       9.    Attached hereto as Exhibit 5 is a true and correct copy of a press release from the

25   Consumer Product Safety Commission entitled "Replacement Program Announced For Rand

26   Bicycle Wheels," dated March 3, 1988.

27

28

DECL. OF BEYER ISO DEF'S OPP. TRO AND OSC RE PRELIMINARY INJUNCTION
CASE NO. CV-08-3897-JSW                                                    1
sf-2562958

1

10.    Attached hereto as Exhibit 6 is a true and correct copy of a Complaint, an

2 Agreement Containing Consent Order, and a Decision and Order by the Federal Trade

3 Commission In the Matter of Rand International Leisure Products, Ltd. (Docket No. C-3865).

4

11.    Attached hereto as Exhibit 7 is a true and correct copy of a Complaint for

5 Trademark and Copyright infringement by Mattel, Inc. and Fisher-Price, Inc. against Rand

6 International Products, Ltd., filed in the Western District of New York and dated December 7,

7 2006.

8

12.    Attached hereto as Exhibit 8 are true and correct copies of two CDC growth charts

9 and a use and interpretation guide.

10

13.    Attached hereto as Exhibit 9 is a true and correct copy of a November 19, 2007

11 Department of Justice Press release entitled "Brown Sues Toy Companies for Lead."

12

I declare under penalty of perjury under the laws of the United States and the laws of the

13 State of California that the statements contained in this document are true and correct.

14

Executed this 19th day of August 2008 at San Francisco, California.

15

16

/s/ Tom E. Beyer
TOM E. BEYER

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1















# Exhibit 2

# WAL★MART®

## Save money. Live better.™

```
              WAL*MART
          WE SELL FOR LESS
        MANAGER JEENU SINGH
          ( 510 ) 669 - 1342
ST# 3455 OP# 00000653 TE# 23 TR# 07854
SW QUAD    003079805995        64.64 X
               SUBTOTAL        64.64
     TAX 1   8.750 %            5.66
                 TOTAL         70.30
             VISA TEND         70.30

ACCOUNT #8445
APPROVAL #01571A
TRANS ID -0088230650437998
VALIDATION -JVX4
PAYMENT SERVICE - E
               CHANGE DUE       0.00

     # ITEMS SOLD 1
   TC# 8326 3670 9296 0367 7798
```



```
   All you need for back to school.
     At our best-in-class prices.
      08/17/08      11:17:32

        ***CUSTOMER COPY***
```

# Exhibit 3

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

FOR IMMEDIATE RELEASE                    **Rand Recall Hotline (800) 338-7677**
July 5, 2000                    CPSC Consumer Hotline: (800) 638-2772
Release # 00-139                    CPSC Media Contact: Kim Dulic, (301) 504-7058

## CPSC, Rand International Announce Recall of Bicycle Helmets

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), Rand International, of Farmingdale, N.Y., is voluntarily recalling about 70,000 bicycle helmets. These bicycle helmets fail impact testing and labeling required under CPSC's Safety Standard for Bicycle Helmets, violating the Consumer Product Safety Act. Riders wearing these helmets are not properly protected from falls, and could suffer severe head injuries.

CPSC and Rand International are not aware of any injuries or incidents involving these products. This recall is being conducted to prevent the possibility of injuries and incidents.

The recalled helmets are various models of the L.A. Cruisin' bicycle helmets. The helmets were sold in various child, youth and adult sizes. The youth and adult-sized helmets are white or black and the child sizes are either blue or pink. A label inside the helmet reads, "Manufactured by Rand International," and MADE IN CHINA." Writing on the packaging reads, "RAND," "L.A. Cruisin'," and "Meets CPSC & ASTM Standards78."

Kmart and Rose's stores nationwide sold these bicycle helmets from April 1999 through March 2000 for about $8.

Consumers should stop wearing these bicycle helmets immediately, and return them to Rand International for a free replacement helmet. For more information, contact Rand International at (800) 338-7677 between 9 a.m. and 5 p.m. ET Monday through Friday, or write to Rand International, Attention: Customer Service Dept., 51 Executive Blvd., Farmingdale, NY 11735-4718.



---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

# Exhibit 4

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                          Washington, DC 20207

FOR IMMEDIATE RELEASE
April 27, 1998
Release # 98-099

**Company Phone Number: (800) 338-7677, ext. #263**
CPSC Consumer Hotline: (800) 638-2772
CPSC Media Contact: Ken Giles, (301) 504-7052

## CPSC, Rand/Ross Bicycle Co. Announce Recall to Repair Mountain Bikes

WASHINGTON, D.C.- In cooperation with the U.S. Consumer Product Safety Commission (CPSC), Rand/Ross Bicycle Co., of Farmingdale, N.Y., is recalling for adjustment 11,000 mountain bikes. The front suspension fork can separate from the frame of these bikes, causing riders to lose control and fall.

Rand/Ross is aware of five reports of serious injuries which reportedly occurred when an improperly adjusted front suspension fork separated from the frame. These injuries included facial fractures and lacerations.

These mountain bikes were distributed under the names Rock Machine 2600, Rock Machine 3600, Tarantula MRX 1200 and Ross Mt. Washington. They are adult sized and sold in various colors including silver and gray, blue, moss green, burgundy, metallic green and luster yellow. Their name and model numbers are written on the bike frames.

Target, Price-Costco, Toys R Us and a limited number of bicycle shops sold these bicycles nationwide from February 1997 to March 1998 for about $200 to $300.

Consumers should stop using the bicycles immediately and call Rand/Ross toll free at (800) 338-7677, extension #263 between 9 a.m. to 5 p.m. EDT Monday through Friday. Consumers will be given the name of a local bicycle dealer/shop/technician who will make the appropriate tightening adjustment with a torque wrench free of charge. If consumers wish to make the adjustment themselves, they will be sent a free retro-fit kit. The retro-fit kit contains a 6-inch 6mm allen wrench and instructions for tightening the bolts.



---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

# Exhibit 5

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

FOR IMMEDIATE RELEASE
March 3, 1988
Release # 88-010

## Replacement Program Announced For Rand Bicycle Wheels

WASHINGTON, DC -- In cooperation with the U.S. Consumer Product Safety Commission, Rand International of Farmingdale, New York, today announced a voluntary replacement program involving approximately 40,000 Model BMX-12 inch sidewalk bicycle wheels, distributed through Otasco and other small retail chain stores in Eastern, Southern and Southwestern U.S., prior to January 1987.

The bicycle in question is a 12" boys bicycle in blue with pneumatic tires. The bicycle can be identified by the Rand label on the stem of the front fork and its black tires (with the following marks imprinted on them):

> SHYH HWA Inflate 40-50 PSI
> 12 l/2 x 12 l/4
> Made in Taiwan

The potential hazard involves wheel rim breakage during the inflation process. When the tire is inflated beyond the recommended P.S.I. (pounds per square inch), the plastic rim may shatter and cause injury to the inflator or to bystanders. Over-inflation beyond the recommendation noted on the tire is inconsistent with inflation instructions. CAUTION must be exercised by the consumer.

Rand and the Commission are not aware of any incidents involving injury with this product; however, laboratory tests have indicated the potential for breakage with the Model BMX-12 when over-inflated.

To determine if your product is affected by the announcement, consumers can call the CPSC for toll-free hotline number at 800-638-CPSC. A teletypewriter number the hearing impaired is 800~638-8270.

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

# Exhibit 6

9923006
B254564

**UNITED STATES OF AMERICA**
**FEDERAL TRADE COMMISSION**

*In the Matter of*

RAND INTERNATIONAL LEISURE PRODUCTS, LTD., a corporation

DOCKET NO. C-3865

## COMPLAINT

The Federal Trade Commission, having reason to believe that Rand International Leisure Products, Ltd. ("respondent") has violated the provisions of the Federal Trade Commission Act, and it appearing to the Commission that this proceeding is in the public interest, alleges:

1. Respondent Rand International Leisure Products, Ltd. is a New York corporation with its principal office or place of business at 52 Executive Boulevard, Farmingdale, New York 11735.

2. Respondent has labeled, offered for sale, sold, and distributed products to the public, including the Signature Self-Sealing Tube ("Self-Sealing Tube").

3. The acts and practices of respondent alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the Federal Trade Commission Act.

4. Respondent has disseminated or has caused to be disseminated packaging for its Self-Sealing Tube, including but not necessarily limited to the attached Exhibit A. The packaging contains the following statement:

   "Made in the U.S.A."

5. Through the means described in Paragraph 4, respondent has represented, expressly or by implication, that its Self-Sealing Tubes are made in the United States, *i.e.*, that all, or virtually all, of the component parts of the Self-Sealing Tubes are made in the United States, and that all, or virtually all, of the labor in manufacturing the Self-Sealing Tubes is performed in the United States.

6. In truth and in fact, the Self-Sealing Tubes packaged in Exhibit A were, or are, finished in the United States from imported tubes that were, or are, manufactured in Taiwan. Therefore, the representations set forth in paragraph 5 were, and are, false or misleading.

7. The acts and practices of respondent as alleged in this complaint constitute unfair or deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act.

THEREFORE, the Federal Trade Commission this sixth day of April, 1999, has issued this complaint against respondent.

By the Commission.

Donald S. Clark
Secretary

SEAL:

9923006
B254564

**UNITED STATES OF AMERICA**
**FEDERAL TRADE COMMISSION**

COMMISSIONERS:
    Robert Pitofsky, Chairman
    Sheila F. Anthony
    Mozelle W. Thompson
    Orson Swindle

*In the Matter of*

RAND INTERNATIONAL LEISURE PRODUCTS, LTD., a corporation.

DOCKET NO. C-3865

**DECISION AND ORDER**

The Federal Trade Commission having initiated an investigation of certain acts and practices of the respondent named in the caption hereof, and the respondent having been furnished thereafter with a copy of a draft complaint which the Bureau of Consumer Protection proposed to present to the Commission for its consideration and which, if issued by the Commission, would charge respondent with violations of the Federal Trade Commission Act; and

The respondent and counsel for the Commission having thereafter executed an agreement containing a consent order, and admission by the respondent of all the jurisdictional facts set forth in the draft complaint, a statement that the signing of said agreement is for settlement purposes only and does not constitute an admission by respondent that the law has been violated as alleged in such complaint, or that the facts as alleged in such complaint, other than jurisdictional facts, are true, and waivers and other provisions as required by the Commission's Rules; and

The Commission having thereafter considered the matter and having determined that it had reason to believe that the respondent violated the said Act, and that a complaint should issue stating its charges in that respect, and having thereupon accepted the executed consent agreement and placed such agreement on the public record for a period of sixty (60) days, now in further conformity with the procedure prescribed in Section 2.34 of its Rules, the Commission hereby issues its complaint, makes the following jurisdictional findings, and enters the following order:

    1. Respondent Rand International Leisure Products, Ltd. is a New York corporation with its principal office or place of business at 51 Executive Boulevard, Farmingdale, New York 11735.

    2. The Federal Trade Commission has jurisdiction of the subject matter of this proceeding and of the respondent, and the proceeding is in the public interest.

**ORDER**

## I.

IT IS ORDERED that respondent, Rand International Leisure Products, Ltd., a corporation, its successors and assigns, and its officers, agents, representatives, and employees, directly or through any corporation, subsidiary, division, or other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product in or affecting commerce, as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44, shall not misrepresent, in any manner, directly or by implication, the extent to which any such product is made in the United States.

PROVIDED, however, that a representation that any such product is made in the United States will not be in violation of this Order so long as all, or virtually all, of the component parts of the product are made in the United States and all, or virtually all, of the labor in manufacturing the product is performed in the United States.

## II.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall, for five (5) years after the last date of dissemination of any representation covered by this order, maintain and upon request make available to the Federal Trade Commission for inspection and copying:

> A. All packaging, labeling, advertisements and promotional materials containing the representation;

> B. All materials that were relied upon in disseminating the representation; and

> C. All tests, reports, studies, surveys, demonstrations, or other evidence in their possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations.

## III.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall deliver a copy of this order to all current and future principals, officers, directors, and managers, and to all current and future employees, agents, and representatives having responsibilities with respect to the subject matter of this order, and shall secure from each such person a signed and dated statement acknowledging receipt of the order. Respondent shall deliver this order to current personnel within thirty (30) days after the date of service of this order, and to future personnel within thirty (30) days after the person assumes such position or responsibilities.

## IV.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall notify the Commission at least thirty (30) days prior to any change in the corporation that may affect compliance obligations arising under this order, including but not limited to a dissolution, assignment, sale, merger, or other action

that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address. Provided, however, that, with respect to any proposed change in the corporation about which respondent learns less than thirty (30) days prior to the date such action is to take place, respondent shall notify the Commission as soon as is practicable after obtaining such knowledge. All notices required by this Part shall be sent by certified mail to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580.

## V.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall, within sixty (60) days after the date of service of this order, and at such other times as the Federal Trade Commission may require, file with the Commission a report, in writing, setting forth in detail the manner and form in which it has complied with this order.

## VI.

This order will terminate on April 6, 2019, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; provided, however, that the filing of such a complaint will not affect the duration of this order if such complaint is filed after the order has terminated pursuant to this Part. Provided, further, that if such complaint is dismissed or a federal court rules that the respondent did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this Part as though the complaint had never been filed, except that the order will not terminate between the date such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

By the Commission.

Donald S. Clark
Secretary

ISSUED: April 6, 1999

UNITED STATES OF AMERICA
BEFORE FEDERAL TRADE COMMISSION

*In the Matter of*

**RAND INTERNATIONAL LEISURE PRODUCTS, LTD., a corporation.**

**FILE NO. 992 3006**

**AGREEMENT CONTAINING CONSENT ORDER**

The Federal Trade Commission has conducted an investigation of certain acts and practices of Rand International Leisure Products, Ltd., a corporation ("proposed respondent"). Proposed respondent is willing to enter into an agreement containing a consent order resolving the allegations contained in the attached draft complaint. Therefore,

**IT IS HEREBY AGREED** by and between Rand International Leisure Products, Ltd., by its duly authorized officers, and counsel for the Federal Trade Commission that:

1. Proposed respondent Rand International Leisure Products, Ltd. is a New York corporation with its principal office or place of business at 51 Executive Boulevard, Farmingdale, New York 11735.

2. Proposed respondent admits all the jurisdictional facts set forth in the draft complaint.

3. Proposed respondent waives:

      a. Any further procedural steps;

      b. The requirement that the Commission's decision contain a statement of findings of fact and conclusions of law; and

      c. All rights to seek judicial review or otherwise to challenge or contest the validity of the order entered pursuant to this agreement.

4. This agreement shall not become part of the public record of the proceeding unless and until it is accepted by the Commission. If this agreement is accepted by the Commission, it, together with the draft complaint, will be placed on the public record for a period of sixty (60) days and information about it publicly released. The Commission thereafter may either withdraw its acceptance of this agreement and so notify proposed respondent, in which event it will take such action as it may consider appropriate, or issue and serve its complaint (in such form as the circumstances may require) and decision in disposition of the proceeding.

5. This agreement is for settlement purposes only and does not constitute an admission by proposed respondent that the law has been violated as alleged in the draft complaint, or that the facts as alleged in the draft complaint, other than the jurisdictional facts, are true.

6. This agreement contemplates that, if it is accepted by the Commission, and if such acceptance is not subsequently withdrawn by the Commission pursuant to the provisions

of Section 2.34 of the Commission's Rules, 16 C.F.R. § 2.34, the Commission may, without further notice to proposed respondent: (1) issue its complaint corresponding in form and substance with the attached draft complaint and its decision containing the following order in disposition of the proceeding; and (2) make information about it public. When so entered, the order shall have the same force and effect and may be altered, modified, or set aside in the same manner and within the same time provided by statute for other orders. The order shall become final upon service. Delivery of the complaint and the decision and order to proposed respondent's address as stated in this agreement by any means specified in Section 4.4(a) of the Commission's Rules, 16 C.F.R. § 4.4(a), shall constitute service. Proposed respondent waives any right it may have to any other manner of service. The complaint may be used in construing the terms of the order. No agreement, understanding, representation, or interpretation not contained in the order or in the agreement may be used to vary or contradict the terms of the order.

7. Proposed respondent has read the draft complaint and consent order. It understands that it may be liable for civil penalties in the amount provided by law and other appropriate relief for each violation of the order after it becomes final.

## ORDER

### I.

IT IS ORDERED that respondent, Rand International Leisure Products, Ltd., a corporation, its successors and assigns, and its officers, agents, representatives, and employees, directly or through any corporation, subsidiary, division, or other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product in or affecting commerce, as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44, shall not misrepresent, in any manner, directly or by implication, the extent to which any such product is made in the United States.

PROVIDED, however, that a representation that any such product is made in the United States will not be in violation of this Order so long as all, or virtually all, of the component parts of the product are made in the United States and all, or virtually all, of the labor in manufacturing the product is performed in the United States.

### II.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall, for five (5) years after the last date of dissemination of any representation covered by this order, maintain and upon request make available to the Federal Trade Commission for inspection and copying:

    A. All packaging, labeling, advertisements and promotional materials containing the representation;

    B. All materials that were relied upon in disseminating the representation; and

    C. All tests, reports, studies, surveys, demonstrations, or other evidence in their possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer

protection organizations.

## III.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall deliver a copy of this order to all current and future principals, officers, directors, and managers, and to all current and future employees, agents, and representatives having responsibilities with respect to the subject matter of this order, and shall secure from each such person a signed and dated statement acknowledging receipt of the order. Respondent shall deliver this order to current personnel within thirty (30) days after the date of service of this order, and to future personnel within thirty (30) days after the person assumes such position or responsibilities.

## IV.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall notify the Commission at least thirty (30) days prior to any change in the corporation that may affect compliance obligations arising under this order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address. Provided, however, that, with respect to any proposed change in the corporation about which respondent learns less than thirty (30) days prior to the date such action is to take place, respondent shall notify the Commission as soon as is practicable after obtaining such knowledge. All notices required by this Part shall be sent by certified mail to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580.

## V.

IT IS FURTHER ORDERED that respondent Rand International Leisure Products, Ltd., and its successors and assigns, shall, within sixty (60) days after the date of service of this order, and at such other times as the Federal Trade Commission may require, file with the Commission a report, in writing, setting forth in detail the manner and form in which it has complied with this order.

## VI.

This order will terminate twenty (20) years from the date of its issuance, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; provided, however, that the filing of such a complaint will not affect the duration of this order if such complaint is filed after the order has terminated pursuant to this Part. Provided, further, that if such complaint is dismissed or a federal court rules that the respondent did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this Part as though the complaint had never been filed, except that the order will not terminate between the date such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

Signed this day of _____, 1998.

RAND INTERNATIONAL LEISURE PRODUCTS, LTD.

By:

Allen Goldmeier
Vice President

Steven Goldmeier
Vice President

Laura Koss
Counsel for the Federal Trade Commission

Kent C. Howerton
Counsel for the Federal Trade Commission

APPROVED:

ELAINE D. KOLISH
Associate Director
Division of Enforcement

JOAN Z. BERNSTEIN
Director
Bureau of Consumer Protection

# Exhibit 7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTEL, INC. and
FISHER-PRICE, INC.,

                        Plaintiffs

v.

RAND INTERNATIONAL LEISURE
PRODUCTS, LTD.,

                        Defendant.
_____

Civil No. _____

**<u>Jury Trial Demanded</u>**

## <u>COMPLAINT</u>

      Plaintiffs, Mattel, Inc. ("Mattel") and Fisher-Price, Inc. ("Fisher-Price") (collectively

hereafter Plaintiffs or "Fisher-Price") by and through their counsel, for their *Complaint* against

Defendant, Rand International Leisure Products, Ltd. ("Rand"), allege upon knowledge as to

their own acts and upon information and belief as to the acts of others as follows:

### <u>Nature of Action and Subject Matter Jurisdiction</u>

1.     This is a civil action for infringement, unfair competition, false representation, and false

        designation of origin arising under the trademark laws of the United States, 15 U.S.C.

        §§1051 *et seq.* and New York common law, as well as for infringement of Copyright

        under the federal Copyright Act, 17 U.S.C. §§ 101 *et seq*.

2.     Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§

        1331 and 1338 and jurisdiction supplement thereto pursuant to 28 U.S.C. § 1367.

**Personal Jurisdiction and Venue**

3.      This Court has jurisdiction over Defendant and venue is properly laid in the Western

District of New York pursuant to 28 U.S.C. §1391(b) and (c) and New York CPLR § 301

in that, on information and belief, Defendant either regularly transacts business in this

District or has committed the tortious acts complained of herein within this District and

Defendant has done and is doing business in the State of New York.

**The Parties**

4.      Plaintiff, Mattel, Inc., is a corporation organized under the laws of the State of Delaware,

with a place of business at 333 Continental Blvd., El Segundo, CA 90245.

5.      Plaintiff, Fisher-Price, Inc., is a corporation organized under the laws of the State of

Delaware, with a place of business at 636 Girard Avenue, East Aurora, New York 14052.

Fisher-Price, Inc. is a wholly-owned subsidiary of Mattel, Inc.

6.      Defendant, Rand International Leisure Products, Ltd., is a corporation organized under

the laws of the State of New York, with a place of business at 51 Executive Boulevard,

Farmingdale, NY 11735.

**The LIL' QUAD**

7.      For many years, Fisher-Price has sold battery powered ride-on toys under the

POWERWHEELS® brand.  These toys are primarily designed for children in various age

groups, depending on the particular toy.  These toys are sold to the public primarily

through large retailers, such as Walmart.

8.    Since 2001, Fisher-Price has sold POWERWHEELS® branded products known as LIL'
      QUAD ride-on toys, aimed at younger children between 12-36 months old.  Fisher-Price
      developed its distinctive LIL' QUAD toys in the style of an all terrain vehicle (ATV).

9.    While initially selling its LIL' QUAD toys in traditional Fisher-Price branded packaging,
      Fisher-Price later packaged LIL' QUAD products in packaging that included various
      character themes, such as "Dora the Explorer," Barbie®, and "Diego."  In developing
      these themed versions of the LIL' QUAD, Fisher-Price took the same existing LIL'
      QUAD ride-on toy and merely applied various decals to decorate the toy to the
      appropriate theme.  The basic LIL' QUAD toy itself remained unchanged.

10.   In connection with this marketing approach, Fisher-Price by 2005 developed a new
      design and trade dress for its themed toy packaging.  Each themed toy now used a nearly
      identical design and layout for its packaging.  The overall theme of the packaging
      remained the same from product to product, with each particular package depicting the
      particular theme character in addition to the same depiction of the toy.

11.   In 2005, Fisher-Price introduced its "Dora the Explorer" product and associated
      packaging.  In July 2006, Fisher-Price added "Diego" product and packaging.  Both
      packages have the same overall layout and design.  The LIL' QUAD toy within each
      package is the same except for the decals applied to the surface of the toy, and the
      particular color the plastic used to mold the toy.

12.   Mattel owns copyright interests in the LIL' Quad toy and the various packaging designs.
      Mattel has since obtained U.S. copyright registrations VA1-378-663 (LIL' QUAD Toy
      Design), VA1-378-661 (LIL' QUAD Blue Packaging Design), and VA1-378-662 (LIL'

QUAD Red Packaging Design).  Copies of the identified registrations are attached with deposits as Exhibits A-C.

13.    Fisher-Price currently licenses from Mattel the rights in the LIL' QUAD toy and packaging designs.

14.    With its LIL' QUAD ride-on toy, Fisher-Price has developed a product that is superior to other battery powered ride-on toys, which includes the use of patented safety features.

15.    Fisher-Price has sold hundreds of thousands of LIL' QUAD toys and Plaintiffs have developed substantial goodwill in the toy and name.

### Defendant's Infringing Activities

16.    Defendant, Rand International Leisure Products, Ltd. ("Rand"), has since sometime around August 2006, sold a product known as the POWER QUAD through retailers such as Walmart (including through Walmart's website).  Pictures of Rand's POWER QUAD are attached as Exhibit D.

17.    Like the POWERWHEELS LIL' QUAD, the POWER QUAD is a battery-powered ride-on toy that is aimed at young children (between 18-36 months).  In fact, the POWER QUAD is copied from the POWERWHEELS LIL' QUAD.

18.    Every shape, curve, and hole cut of the Rand POWER QUAD is identical to the Fisher-Price LIL' QUAD.  Indeed, even though Rand uses a slightly different electrical wiring system than the one Fisher-Price uses in its toy, the POWER QUAD has the same wiring holes found in the LIL' QUAD even though some of those are unused in the Rand toy.

19.    Rand's POWER QUAD thus represents a deliberate copy of the Fisher-Price toy, most likely made by a process by which the LIL' QUAD toy itself was obtained and used by Rand to form a mold for use in the manufacturer of POWER QUAD toys.

20.    While Rand's product is facially identical to Fisher-Price's product, however, it lacks safety features found in the LIL' QUAD, such as the patented battery used in Fisher-Price's product.

21.    To sell its product, Rand also copied Fisher-Price's packaging for its themed LIL' QUAD products.  The layout of both products' packaging are substantially and confusingly similar, and employ highly similar elements, including layout, photos, and designs. Photographs of Rand's POWER QUAD toy packaging are attached as Exhibit E.

22.    As a result of Rand's actions, consumers are likely to be confused or misled into believing that Rand and its infringing POWER QUAD toy are somehow affiliated with Fisher-Price or its line of genuine LIL' QUAD toys, or that the POWER QUAD toy is sponsored, authorized, approved, or sanctioned by Fisher-Price.

23.    Rand's POWER QUAD and its packaging are substantially similar to Fisher-Price's LIL' QUAD and its various packaging designs.

## COUNT I

### Unfair Competition, False Representation, and False Designation of Origin Under Federal Law

24.    This cause of action for unfair competition, false representation, and false designation of origin arises under Section 1125 of Title 15 of the United States Code ("Section 43(a) of the Lanham Act").  In support thereof, Plaintiffs repeat and reallege paragraphs 1 through 23 as though fully set forth herein.

25.    Rand's use of the POWER QUAD name and the POWER QUAD packaging constitutes unfair competition with Plaintiffs in violation of Section 43(a) of the Lanham Act because such use is likely to cause confusion, mistake, and deception as to the origin of

goods sold or provided in connection with that packaging trade dress or in connection with Plaintiffs' trade dress, and it is likely to mislead consumers and potential consumers into believing that such goods are somehow affiliated with, or are sponsored, authorized, approved, or sanctioned by, Plaintiffs, or that goods and services sold or provided in connection with Plaintiffs' trade dress are somehow affiliated with, or are sponsored, authorized, approved, or sanctioned by, Rand.

26.     Rand's use of the POWER QUAD name and the POWER QUAD packaging also constitutes a false representation and false designation of origin in violation of Section 43(a) of the Lanham Act in that such use tends to describe or represent that goods sold or provided in connection with the Quad Packaging are somehow affiliated with, or are sponsored, authorized, approved, or sanctioned by, Plaintiffs, or that goods and services sold or provided in connection with Plaintiffs' trade dress are somehow affiliated with, or are sponsored, authorized, approved, or sanctioned by, Rand.

27.     Such activities by Rand trade upon the goodwill that Plaintiffs have established in their distinctive LIL' QUAD trade dress, including the POWERWHEELS LIL' QUAD name.

28.     Rand has engaged and continues to engage in the above-complained of activity knowingly, willfully, and in bad faith, so as to justify the assessment of treble damages against it in an amount to be determined at the time of trial, along with Plaintiffs' reasonable attorneys fees and the costs of this action.

29.    The aforesaid acts of Rand have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at the time of trial.

30.    The aforesaid acts of Rand have caused, and unless enjoined by this Court will continue to cause, irreparable damage, loss, and injury to Plaintiffs for which they have no adequate remedy at law.

### COUNT II

#### Trademark Infringement, Unfair Competition and Misappropriation (Common Law)

31.    This count is to remedy acts of trademark and trade name infringement, unfair competition and misappropriation under the common law of, *inter alia*, the State of New York.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 30 of this Complaint as though fully set forth herein.

32.    Rand's unlawful activities as described above are likely to cause confusion between Rand and/or its products and Plaintiffs and/or their products, and such activities by Rand infringe the valuable common law trade dress rights of Plaintiffs relating to the trade dress of their 'LIL QUAD products, including the POWERWHEELS LIL' QUAD name.

33.    Rand's activities also constitute unfair competition with Plaintiffs by creating a likelihood of confusion as to the source or sponsorship of Rand's goods and services; misappropriate and trade upon the fine reputation and goodwill of Plaintiffs in their 'LIL QUAD trade dress, thereby injuring that reputation and goodwill; and unjustly divert from Plaintiffs to Rand the benefits arising therefrom.

34.    Rand's unlawful activities constitute trade dress infringement, unfair competition and misappropriation as proscribed by the common law.

35.     Rand's acts of trade dress infringement, unfair competition and misappropriation have
        caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be
        determined at the time of trial.

36.     Rand has engaged and continues to engage in this activity knowingly, deliberately and
        willfully, so as to justify the assessment of increased and punitive damages against it, in
        an amount to be determined at the time of trial.

37.     Rand's acts of trade dress infringement, unfair competition and misappropriation, unless
        enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage,
        loss and injury for which Plaintiffs have no adequate remedy at law and, unless
        restrained, will continue to cause irreparable harm.


## COUNT III

### Copyright Infringement

38.     This count is to remedy acts of federal Copyright infringement.  Plaintiffs repeat and
        reallege each and every allegation contained in paragraphs 1 through 37 of this
        Complaint as though fully set forth herein.

39.     In or around 2001, the ornamental toy design (the "LIL' Quad Toy Design") was created,
        which Fisher-Price sells under the name "LIL' QUAD."  From 2001 to the present,
        Fisher-Price used the LIL' QUAD toy design for a variety of toys.

40.     In or around 2005, two ornamental packaging designs (the "LIL' QUAD Red Package
        Design" and the "LIL' QUAD Blue Package Design") were created for use in the sale of
        Fisher-Price's LIL' QUAD toys.

41.     Mattel is the owner of all of the copyrights in the LIL' QUAD Toy Design as well as in the LIL' QUAD Red Package Design and the LIL' QUAD Blue Package Design (collectively, the "LIL' QUAD Toy/Packaging Designs").  Fisher-Price, as Mattel's licensee, has always used the LIL' QUAD Toy/ Packaging Designs with the consent of its parent company, Mattel, Inc., and the various packaging that Fisher-Price has used has included a copyright notice denoting Mattel and/or Fisher-Price as the owner of all copyright rights.

42.     The LIL' QUAD Toy Packaging Designs have been registered by the United States Copyright Office.  Copies of the Certificates of Registrations are attached as Exhibits A-C.

43.     Pictures of the toy design (the "Infringing Toy Design") and of the packaging design (the "Infringing Packaging Design") that Rand is using in connection with its POWER QUAD toy are attached as Exhibits D and E.  As can be seen below, the toy and packaging designs that Rand is using are substantially similar (if not identical) to the toy and packaging designs used by Fisher-Price for its LIL' QUAD toy.

44.     Rand's use of toy and packaging designs that are substantially similar to those used by Fisher-Price is not mere happenstance.

45.     On information and belief, Rand provided its manufacturer with an actual sample of, and likely other information or material relating to, the LIL' QUAD Toy Design and/or one or more of the LIL' QUAD Packaging Designs with the intent of having the manufacturer copy those designs.

46.     Rand's copying of the LIL' QUAD Toy/Packaging Designs thus constitutes intentional copyright infringement of Mattel's copyright rights in and to those designs.

47.     Rand had actual notice of Mattel's rights in the LIL' QUAD Toy/Packaging Designs, but

proceeded in complete disregard thereof.  Accordingly, Rand's infringement of Mattel's

copyright rights (along with trademark and trade dress rights) was willful and deliberate.

48.     Rand's aforementioned acts of copyright infringement have damaged Plaintiffs in an

amount to be proven at time of trial.

49.     Rand's aforementioned acts of copyright infringement should be enjoined.

## **JURY DEMAND**

50.     Plaintiffs demand trial by jury of all causes of action in the complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mattel, Inc. and Plaintiff Fisher-Price, Inc. pray for an Order

and judgment:

A.      That Defendant, Rand International Leisure Products, Ltd., its officers, agents,

representatives, servants, employees, and attorneys, and those persons in active concert or

participation with them, who receive actual notice of the Order by personal service or

otherwise, be permanently enjoined from:

(1)     Using the POWER QUAD name or the POWER QUAD packaging, or any other

reproduction, counterfeit, copy, colorable imitation, or confusingly similar

variation of thereof, in the connection with the sale or provision or any toys or any

other goods that consumers associate with Fisher-Price's 'LIL QUAD toys;

(2)     Engaging in acts that constitute infringement, unfair competition, false

representation, or false designation of origin, under the trademark laws of the

United States and which would damage or injure Plaintiffs;

(3)     Using or distributing the Infringing Packaging Design, or any packaging substantially similar thereto, and from preparing or authorizing the preparation by others of any packaging or other materials containing the same, or containing any packaging substantially similar thereto;

(4)     Using or distributing the Infringing Toy Design, or any toy design substantially similar thereto, and from preparing or authorizing the preparation by others of any toy or other materials containing the same, or containing any toy design substantially similar thereto;

(5)     Copying or reproducing the LIL' QUAD Toy/Packaging Designs, or any toy or packaging substantially similar thereto, or preparing or authorizing the preparation by others of any packaging or other materials containing the same, or containing any packaging substantially similar thereto;

(6)     Exploiting, distributing, publishing, selling, offering for sale or advertising any product whose product or product packaging copies, makes use of or incorporates any portion or aspect of the LIL' QUAD Toy/Packaging Designs, or any toy or packaging substantially similar thereto; or

(7)     Inducing, encouraging, instigating, aiding, abetting, or contributing to any of the aforesaid acts.

B.     That Rand be required to take such actions as may be directed by this Court to remedy and alleviate any consumer confusion or any loss of goodwill suffered by Plaintiffs as a result of Rand's prior infringing acts;

C.     That in accordance with 15 U.S.C. §1118, Rand be ordered to deliver up for destruction any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements (and

the like) in its possession or under its custody or control that use the POWER QUAD name or the POWER QUAD packaging in connection with toys or any other goods that consumers associate with Fisher-Price's 'LIL QUAD toys;

D.    That in accordance with 17 U.S.C. §503, all copies of the Infringing Packaging Design and Infringing Toy Design, and all other materials that infringes any of the LIL' QUAD Toy/Packaging Designs, and any and all plates, molds, masters, matrices or other materials by means of which such copies may be reproduced, and which are in the possession, custody or control of Rand or Rand's licensee(s), wholesalers, or retailers, be impounded by the Court during the pendency of this action, and thereafter, at the option of Plaintiffs, be either destroyed or delivered up to Plaintiffs;

E.    That in accordance with 15 U.S.C. §1116, Rand be directed to file with the Court and serve on Plaintiffs, within a time set by the Court, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the Court's order in this Action;

F.    That in accordance with 15 U.S.C. § 1117(a), Rand be ordered to:

(1)    Account for and pay over to Fisher-Price and Mattel an amount equal to three times all of the gains, profits, savings, and advantages realized by Rand as a result of its unlawful activities;

(2)    Pay over to Fisher-Price and Mattel an amount equal to three times the amount of damages sustained by Fisher-Price and Mattel as a result of Rand's unlawful activities, said amount to be determined by this Court;

(3)    Reimburse Fisher-Price and Mattel for the costs of this action; and

      (4)     Reimburse Fisher-Price and Mattel for any reasonable attorney fees incurred as a result of Rand's unlawful activities, including all attorney fees incurred during this action;

G.     That in accordance with 17 U.S.C. § 504, Rand be ordered to:

      (1)     Account and pay over to Fisher-Price and Mattel all gains, profits, and advantages derived by it from its infringement of Mattel's copyrights in the LIL' QUAD Toy/Packaging Designs;

      (2)     Pay over to Fisher-Price and Mattel the damages that Fisher-Price and Mattel have sustained by reason of Rand's infringement of Mattel's copyright in the LIL' QUAD Toy/Packaging Designs and in any Previous Toy Packaging Design, together with legal interest from the date of accrual thereof;

      (3)     Pursuant to 17 U.S.C. § 505, pay over to Fisher-Price and Mattel their costs and disbursements in connection with this action;

H.     That Fisher-Price and Mattel be awarded both pre-judgment and post-judgment interest on any monies to be paid to Fisher-Price and Mattel by Rand; and

I.     That Fisher-Price and Mattel be awarded such other and further relief as the Court may deem just and proper.

Dated: December 7, 2006

**HODGSON RUSS LLP**


By_____s/Robert J. Lane, Jr._____
             Robert J. Lane, Jr.
One M&T Plaza, Suite 2000
Buffalo, NY  14203
Telephone:  (716) 856-4000

and

**KENYON & KENYON LLP**
John R. Hutchins
William M. Merone
Erik C. Kane
1500 K Street, N.W., Suite 700
Washington, DC  20005
Telephone: (202) 220-4200

*Counsel for Plaintiffs, Fisher-Price, Inc.*
*and Mattel, Inc.*


003279/00000 BFLODOCS 1740275v1

14

# Exhibit 8

# CDC Growth Charts: United States



**Weight-for-age percentiles:
Boys, 2 to 20 years**

Age (years)

Published May 30, 2000.
SOURCE: Developed by the National Center for Health Statistics in collaboration with
    the National Center for Chronic Disease Prevention and Health Promotion (2000).



SAFER · HEALTHIER · PEOPLE™

# CDC Growth Charts: United States



**Weight-for-age percentiles:
Girls, 2 to 20 years**

Age (years)

Published May 30, 2000.
SOURCE: Developed by the National Center for Health Statistics in collaboration with
the National Center for Chronic Disease Prevention and Health Promotion (2000).



SAFER · HEALTHIER · PEOPLE™

# Use and Interpretation of the CDC Growth Charts



## Purpose

This guide instructs health care providers on how to use and interpret the CDC Growth Charts to assess physical growth in children and adolescents. Using these charts, health care providers can compare growth in infants, children, and adolescents with a nationally representative reference based on children of all ages and racial or ethnic groups. Comparing body measurements with the appropriate age- and gender-specific growth chart enables health care providers to monitor growth and identify potential health- or nutrition-related problems.

During routine screening, health care providers assess physical growth using the child's weight, stature, length, and head circumference. Although one measurement plotted on a growth chart can be used to screen children for nutritional risk, it does not provide adequate information to determine the child's growth pattern. When plotted correctly, a series of accurate weights and measurements of stature or length offer important information about a child's growth pattern, which may be influenced by such factors as gestational age, birth weight, and parental stature. Parental stature, for example, is considered before assuming there is a health or nutrition concern. Other factors, such as the presence of a chronic illness or special health care need, must be considered, and further evaluation may be necessary.

## STEP

### 1

**Obtain accurate weights and measures** When weighing and measuring children, follow procedures that yield accurate measurements and use equipment that is well maintained. See the *Anthropometry: Accurately Weighing and Measuring Infants, Children and Adolescents* module for information about accurate weighing and measuring procedures.

### 2

**Select the appropriate growth chart** Select the growth chart to use based on the age and gender of the child being weighed and measured.

- *Enter the child's name and the record number, if appropriate.*

Use the charts listed below when measuring boys and girls in the recumbent position (should be limited to those less than 36 months old):

- Length-for-age
- Weight-for-age
- Head circumference-for-age
- Weight-for-length

Use the charts listed below when determining the stature (standing height) of boys and girls aged 2 to 20 years:

- Weight-for-age
- Stature-for-age
- BMI-for-age

# 3

**Record data**  After selecting the appropriate chart and entering the patient's name and record number, if appropriate, complete the data entry table.

First, record information about factors obtained at the initial visit that influence growth.

- *Enter mother's and father's stature as reported.*
- *Enter the gestational age in weeks.*

The next line is reserved for recording the child's birth data. (*Omit this step when using growth charts for children aged 2 to 20 years.*)

- *Enter the date of birth.*
- *Enter birth weight, length, and head circumference.*
- *Add notable comments (e.g., breastfeeding).*

Record information obtained during the current visit.

- *Enter today's date.*

Determine age to the nearest month for infants and 1/4-year for children 2 to 20 years.

- *Enter the child's age.*

***Example of how to calculate the child's age:*** To calculate Sam's age, subtract his birth date from the date of the visit or measurement. To subtract, it will be necessary to convert months to days and years to months if either the month or day in the birth data is larger than in the date of measurements. When converting one month to days, subtract 1 from the number of months in the date of measurement, then add 28, 30, or 31, as appropriate, to the number of days. When converting one year to months, subtract 1 from the number of years in the date of measurement, then add 12 to the number of months.

|  | Year | Month | Day |
|---|---|---|---|
| Date of Measurement | 1998 | 4 | 4 |
| *Convert one month to days* |  | (-1) | (+30) |
|  | 1998 | 3 | 34 |
| *Convert one year to months* | (-1) | (+12) |  |
|  | **1997** | **15** | **34** |
| Birth Date | 1994 | 9 | 15 |
| Child's Age | 3 | 6 | 19 |

Sam is aged 3 years, 6 months, and 19 days.

| Days ⟶ Month | | Months ⟶ Year | |
|---|---|---|---|
| 0–15 | 0 | 0–1 | 0 |
| 16–31 | 1 | 2–4 | 1/4 |
| | | 5–7 | 1/2 |
| | | 8–10 | 3/4 |
| | | 11–12 | 1 |

**Using the guide above, 3 years, 6 months, and 19 days is rounded to 3 years and 7 months. Because age for children over 2 is rounded to the nearest 1/4 year, Sam's age is rounded to 3 1/2 years.**

- *Enter weight, stature, and head circumference (if appropriate) immediately after taking the measurement.*
- *Add any notable comments (e.g., was not cooperative).*

**4** **Calculate BMI**  BMI is calculated using weight and stature measurements, then used to compare a child's weight relative to stature with other children of the same age and gender.

■ *With a calculator, determine BMI using the calculation below.*

> **BMI = Weight (kg) ÷ Stature (cm) ÷ Stature (cm) x 10,000**
>                         Or
> **BMI = Weight (lb) ÷ Stature (in) ÷ Stature (in) x 703**

It is necessary to convert the weight and stature measurements to the appropriate decimal value shown in Table 1.

*Example: 37 lbs. 4 oz. = 37.25 lbs., 41-1/2 inches = 41.5 in.*

### Table 1. Decimal Conversions

| Fraction | Ounces | Decimal |
|----------|--------|---------|
| 1/8 | 2 | .125 |
| 1/4 | 4 | .25 |
| 3/8 | 6 | .375 |
| 1/2 | 8 | .5 |
| 5/8 | 10 | .625 |
| 3/4 | 12 | .75 |
| 7/8 | 14 | .875 |

■ *Enter BMI to one place after the decimal point (Example: 15.204 = 15.2).*

See the *Using the BMI-for-Age Growth Chart* module (www.cdc.gov/growthcharts) for more information and additional resources on calculating BMI.

**5** **Plot measurements**  On the appropriate growth chart, plot the measurements recorded in the data entry table for the current visit.

■ *Find the child's age on the horizontal axis. When plotting weight-for-length, find the length on the horizontal axis. Use a straight edge or right-angle ruler to draw a vertical line up from that point.*

■ *Find the appropriate measurement (weight, length, stature, head circumference, or BMI) on the vertical axis. Use a straight edge or right-angle ruler to draw a horizontal line across from that point until it intersects the vertical line.*

■ *Make a small dot where the two lines intersect.*



**6** **Interpret the plotted measurements** The curved lines on the growth chart show selected percentiles that indicate the rank of the child's measurement. For example, when the dot is plotted on the 95th percentile line for BMI-for-Age, it means that only 5 of 100 children (5%) of the same age and gender in the reference population have a higher BMI-for-Age. Interpret the plotted measurements based on the percentile ranking and the percentile cutoff corresponding to the nutrition indicator shown in the table below. If the percentile rank indicates a nutrition-related health concern, additional monitoring and assessment are recommended.

- *Determine the percentile rank.*
- *Determine if the percentile rank suggests that the anthropometric index is indicative of nutritional risk based on the percentile cutoff value.*
- *Compare today's percentile rank with the rank from previous visits to identify any major shifts in the child's growth pattern and the need for further assessment.*

| Anthropometric Index | Percentile Cut-off Value | Nutritional Status Indicator |
|---|---|---|
| BMI-for-Age | ≥ 95th | Overweight |
| Weight-for-Length | > 95th | |
| BMI-for-Age | ≥ 85th and < 95th | At Risk of Overweight |
| BMI-for-Age | | |
| Weight-for-Length | < 5th | Underweight |
| Stature/Length-for-Age | < 5th | Short Stature |
| Head Circumference-for-Age | < 5th and > 95th | Developmental Problems |

# References

World Health Organization. *Physical Status: The Use and Interpretation of Anthropometry.* Geneva: World Health Organization, 1995. WHO Technical Report Series 854.

American Academy of Pediatrics. *Pediatric Nutrition Handbook.* 4th ed. Elk Grove Village, IL: American Academy of Pediatrics. 1998;4:168–169.

Kuczmarski RJ, Ogden C, Grummer-Strawn LM, et al. *CDC Growth Charts: United States.* Hyattsville, MD: U.S. Department of Health and Human Services, 2000. NCHS Advance Data Report No. 314.

Himes JH, Dietz WH. Guidelines for overweight in adolescent preventive services: Recommendations from an expert committee. *American Journal of Clinical Nutrition* 1994;59:307–316.

Barlow SE, Dietz WH. Obesity evaluation and treatment: Expert committee recommendations. *Pediatrics* 1998;102(3):E29.

Nelhaus G. Head circumference from birth to eighteen years: Practical composite international and interracial graphs. *Pediatrics* 1968;41:106–114.

# Exhibit 9

State of California • Department of Justice

# OFFICE OF THE ATTORNEY GENERAL

Edmund G. Brown Jr.

## News Release
November 19, 2007
FOR IMMEDIATE RELEASE
Contact: Gareth Lacy [(916) 324-5500] (916) 324-5500

## Brown Sues Toy Companies For Lead

LOS ANGELES—California Attorney General Edmund G. Brown Jr. and Los Angeles City Attorney Rockard J. Delgadillo today sued twenty companies for manufacturing or selling toys with "unlawful quantities of lead."

Commenting on the lawsuit which was filed today in Alameda County Superior Court, Attorney General Brown said, "Companies must take every reasonable step to assure that the products they handle are safe for children and their families and fully comply with the laws of California. Despite the lengthening global supply chain, every company that does business in this state must follow the law and protect consumers from lead and other toxic materials."

"Lead in toys poses a significant threat to the health and well being of our children," said Los Angeles City Attorney Rocky Delgadillo. "This lawsuit is intended to ensure that these companies eliminate lead and other harmful substances from children's toys, once and for all."

The state's lawsuit alleges that companies knowingly exposed individuals to lead—a chemical known to the State of California to cause cancer and reproductive harm—and failed to provide any warning about this risk. Under the Safe Drinking Water and Toxic Enforcement Act of 1986, known as Proposition 65, businesses cannot expose individuals to hazardous chemicals without posting a clear warning.

Proposition 65 is enforced through lawsuits brought by the attorney general, district attorneys and city attorneys in cities with a population exceeding 750,000. Lawsuits may also be brought by private parties, but only after these parties notify the attorney general of the alleged violation.

The California Attorney General—who successfully negotiated settlements in the past to remove lead in candy, soda bottles, jewelry and other consumer products—launched an investigation into toy manufacturers and retailers after the federal Consumer Product Safety Commission began issuing recall notices for toys that exceeded federal lead limits. Beginning with the recall of 1.5 million Thomas the Tank Engine toys in June, 46 toy products have been recalled for excessive levels of lead—totaling approximately 6 million toys this year.

Following the national recall, the attorney general received notices of impending lawsuits against toy companies from the Center for Environmental Health, Environmental Law Foundation, and As You Sow. Under Prop 65, private parties must notify the attorney general of the allegations before bringing a lawsuit. The attorney general then has the option to take over these lawsuits or allow the complaints to proceed independently.

Although Proposition 65 only requires companies to post hazard warnings, many businesses choose to eliminate the toxic chemicals altogether. Last year, the attorney general prompted over 70 retailers and distributors to meet tougher lead standards for jewelry. Many companies subject to today's lawsuit have indicated they are also committed to taking measures to ensure that lawful standards are met in the future.

Businesses that violate Proposition 65 are subject to civil penalties of up to $2,500 per day for each violation. In addition, courts may order businesses to stop committing the violation. Today's lawsuit seeks to

remedy past violations and prompt manufacturers and retailers to establish processes that prevent toys with lead from being sold in the future.

Proposition 65 requires the Governor to publish a list of chemicals that are known to the State of California to cause cancer, birth defects or other reproductive harm. Lead has been listed since 1987 as a chemical that can cause reproductive harm and birth defects, and has been on the list of chemicals known to cause cancer since 1992.

Lead is a toxic metal that damages the nervous system and other organs. Children are particularly susceptible to the risks of lead exposure. Children can ingest the lead in toys when they place the toys in their mouths, handle the toys and then touch their mouths, or transfer the lead from the toys to other items such as food.

Companies subject to today's lawsuit include: Mattel, Fisher-Price, Michaels Stores, Toys R Us, Wal-Mart, Target, Sears, KB Toys, Costco Wholesale, A&A Global Industries, RC2 Corporation, Eveready Battery Company, Kids II, Kmart, Marvel Entertainment, Toy Investments.

For more information about Prop 65 and to view the private party notices please visit: http://ag.ca.gov/prop65/index.php. For more information about the national toy recall, please visit the Consumer Product Safety Commission at: http://www.cpsc.gov/cpscpub/prerel/prerel.html

The state's lawsuit is attached.

# # #