KELLEY DRYE & WARREN
JONATHAN COOPERMAN (Admitted *pro hac vice*)
ELANA GLATT (Admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178-0002
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
jcooperman@kelleydrye.com

BUCHALTER NEMER
A Professional Corporation
RICHARD C. DARWIN (SBN: 161245)
333 Market Street, 25th Floor
San Francisco, CA 94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
rdarwin@buchalter.com

Attorneys for Plaintiff
RAND INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RAND INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> LUCASFILM LTD., <br><br> Defendant. | CASE NO. CV 08-3897 JSW <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR** <br><br> **(1) TEMPORARY RESTRAINING ORDER; AND** <br><br> **(2) ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> Date:         August 22, 2008 <br> Time:         9:00 a.m. <br> Courtroom: 2 <br> Judge:       Hon. Jeffrey S. White |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Plaintiff Rand International Inc. ("Plaintiff" or "Rand International") submits this

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

MEM. POINTS AND AUTH. ISO
APPLICATION FOR TRO

reply memorandum of law in further support of its motion for a preliminary injunction to enjoin Defendant LucasFilm Ltd. ("Defendant" or "LucasFilm") from terminating a license agreement between the two parties.

This lawsuit involves LucasFilm's wrongful attempted termination of a License Agreement. In its moving papers Rand International demonstrated that Defendant's termination was improper with respect to the Scooters. LucasFilm's submission is perhaps most noteworthy for those facts that it does not contest. This evidence is as follows:

- Rand International explained that the failure of the Scooter test was because of incorrect testing protocol set to a 200 lb user (Worksman Mov. Decl. ¶ 57)[1];
- LucasFilm knew that the Scooter was intended and sold for a 100-pound-maximum user (Id., ¶¶ 52-53)
- Rand International provided Defendant with eight (8) separate quality tests done on this Scooter model from 2005 through June 23, 2008 for a 100 pound rider and each test gave the Scooter a passing grade (Id., Ex K.);
- The Scooter was retested by Intertek on June 23, 2008 and passed. Rand International provided Defendant with this test on June 24, 2008 (Anderson Decl. Ex. 12);
- The Scooter was retested by Bureau Veritas on July 10, July 11, and July 14, 2008 and passed. (Worksman Mov. Decl. Exs. K-2 – K-4.)
- Rand International has also been supplying the same Scooter model to Wal-Mart since January 2007 in connection with a number of Licensed Products. The Scooter has passed each and every Wal-Mart quality test. Id., ¶ 49.)

Indeed, this Scooter manufactured for a 100 pound child is the exact same Scooter sold by Rand International for the past several years to many major retailers in either a generic version or in one of several licensed versions, such as with a Batman or Spiderman logo. Toys-R-Us itself has purchased from Rand International over 33,000 units, all for 100 pound children, without a prior complaint. (Worksman Mov. Decl. at ¶ 48).

With respect to the Bicycle and the issue of lead, Rand International has just learned some new information which changes the nature of its original submission to this Court, but which Rand International does not believe should impact the ultimate outcome of the relief that it seeks. When Rand International learned of the failed Bureau Veritas lead test, and could

---

[1] References to "Worksman Mov. Decl. __" are to the Declaration of Mark Worksman dated August 14, 2008. References to "Reply Decl." are to the Reply Declaration of Mark Worksman dated August 20, 2008.

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 2 -

MEM. POINTS AND AUTH. ISO
APPLICATION FOR TRO

not inspect the tested product since it was destroyed, Rand International nevertheless immediately quarantined every bicycle made by that manufacturer, Liwang Bicycles. Rand International then had several of these same types of tests done on the quarantined bicycles (i.e., scraping paint from several areas of the bikes) and each test came back negative. (Worksman Dec at ¶ 63; Reply Dec at ¶¶ 11-13). In fact, Rand International had bicycles manufactured by other companies such as Topright and none of these bicycles had any lead issue.

Even after receiving passing test certification from three independent testing agencies which showed no issues with lead paint in the bicycle, in an abundance of caution, Rand International recently had an independent testing company perform a more sophisticated test, over and above industry standards, in which components of the quarantined bike were individually tested. Rand International learned earlier today that there may be an issue with lead paint with respect to the fork of the bike, and no other part. The company is conducting further testing to determine the nature and extent of the problem if any. Rand International will of course disclose to the Court the results when it learns them. However, to the extent that there is a problem with the fork on the quarantined bicycles, which have never been shipped to any retailers, the problem is curable as the bicycles can either be destroyed or the fork can be changed and a new proper fork can be installed.

Defendant's submission also ignores the terms of the License Agreement, which provides only limited circumstances upon which Defendant can validly terminate the agreement. Although Defendant claims that the agreement allows it to terminate whenever there is a breach, that is not the case. The agreement expressly provides for termination only if a breach is incurable. Here, however, the nature of a breach with respect to lead paint was curable. As soon as Rand International learned of the issue, it had all suspect bicycles quarantined so that the matter could be further investigated, which it has done and is still doing.

Defendant's submission also raises two new arguments, both which are without

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 3 -

MEM. POINTS AND AUTH. ISO
APPLICATION FOR TRO

merit. First, although Defendant in its termination letter only cited the Bicycle and Scooter issues as the basis of termination, Defendant now claims that it terminated because of what it calls "repeated product failures." However, Defendant fails to state what these "repeated" failures were. That is because there were no other issues relating to the safety of Rand's Products. In fact, with the exception of the June 10, 2008 Toys "R" Us test, all other Star Wars products produced by Rand International have passed tests at every single other retailer, including at Wal-Mart, where numerous products, including the supposedly unsafe Scooters and Bicycles, have passed Wal-Mart's rigorous testing requirements. (Worksman Mov. Decl. ¶ 42, Ex. C.4).

Second, Defendant accuses Rand International of having a "deplorable safety record" and that Rand International "has never shown safe manufacturing processes." All of the cited incidents occurred prior to the time LucasFilm entered the October 2007 License Agreement. As a sophisticated licensor, Defendant presumably had no issue with such matters prior to entering into the License Agreement. Moreover, these so-called incidents are dated. Indeed, Defendant goes so far as to cite a 20 year old incident. None bear on whether Rand International's products are currently safe.

Finally, Defendant's argument that there is no risk of irreparable harm in the absence of an injunction is also in complete disregard of the facts. If it is determined that Defendant had no right to terminate, the damage to Rand International cannot be reversed. This harm consists of damage to its reputation and good will, as well as the real possibility that Rand International will be forced to go out of business entirely. Moreover, contrary to Defendant's argument, this harm is not speculative. Already, one retailer has told Rand International that as a result of the termination it will no longer do business with Rand International in the future  This is precisely the type of harm that courts routinely find is neither repairable nor speculative. Accordingly, LucasFilm should be enjoined from its wrongful termination of the Agreement.

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 4 -

MEM. POINTS AND AUTH. ISO
APPLICATION FOR TRO

**STATEMENT OF FACTS**

Facts relevant to the instant proceeding are contained in the Declaration (the "Worksman Decl."), Declaration of Joanna Wright ("Wright Decl.") and Reply Declaration of Mark Worksman ("Reply Decl.") to which this Court is respectfully referred.

**ARGUMENT**

**I. RAND INTERNATIONAL HAS ESTABLISHED ITS ENTITLEMENT[2] TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION PENDING RESOLUTION OF THIS DISPUTE**

    **A. Rand Has Established A Likelihood of Success On the Merits On Its Breach Of Contract Claim**

In its opposition, Defendant has failed to come up with any facts or evidence which show its termination of the License Agreement was justified. While Defendant attempts to paint a picture of acting reasonably in the face of safety concerns, the factual record which Defendant ignores much of the factual record.

        **1. Defendant's Termination With Respect to the Scooter Was Without Basis**

In its June 18, 2008 letter to Rand International purporting to terminate the License Agreement, Defendant claimed it was entitled to immediately terminate the License Agreement solely on the grounds that two products—the Scooter and Bike—had not passed a safety test conducted by Bureau Veritas. (Worksman Mov. Decl. ¶¶ 37-38.) As discussed in Plaintiff's moving papers, these products were not in fact defective. (Mov. Mem. at 5-7; Worksman Mov.

---

[2] As an initial matter, Defendant is wrong that Rand International is subject to a heightened standard. The relief that Rand International seeks does not alter the status quo as Defendant suggests. For example, in Schrier v. University of Colo., 427 F.3d 1253, 1260 (10th Cir. 2005), cited by Defendant, the court held, "the status quo is the *last uncontested status* between the parties which preceded the controversy until the outcome of the final hearing." In that case, plaintiff sought to require defendant to reinstate him in his prior employment position. Id. The Tenth Circuit held that the relief sought was merely a preservation, and not an alteration, of the status quo as it was before the dispute arose. Id. Similarly, here, an order for reinstatement of the license agreement is not subject to a heightened standard.

In any event, even if this Court were to characterize the motion as one for a mandatory injunction, Rand International has met the heightened burden for injunctive relief.

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 5 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

Decl. ¶¶46-47).

With respect to the Scooter, Defendant ignores that:

- On June 23, 2008, Rand International explained that the failure of the Scooter test was because of incorrect testing protocol (Worksman Mov. Decl.Ex. C.2) ;
- On June 13, 2008, Rand International provided Defendant with eight (8) separate quality tests done on this Scooter model from 2005-2008 for a 100 pound rider and each test gave the Scooter a passing grade (Id., Ex. K);
- The Scooter was retested by Intertek on June 23, 2008 and passed; (Id., Ex. K.1.) Rand International provided Defendant with the Intertek test on June 24, 2008;
- The Scooter was retested by BV on July 10, July 11, and July 14, 2008 and passed (Id., Exs. K.2 – K.4); and
- Rand International has been supplying the same Scooter model to Wal-Mart since January 2007 in connection with a number of Licensed Products and the Scooter has passed each and every Wal-Mart quality test (Id. ¶ 49).

Defendant's only response in its submission to the passed Scooter tests is its contention that a 200 lb. test was appropriate because many 14 year olds weigh over 100 lbs. (Def. Mem. at 10). This argument however, ignores the fact that LucasFilm specifically approved the sample for the Scooter, which stated it is <u>only</u> designed for children 100 lbs and below. (Worksman Mov. Dec. ¶65, Ex. V). Thus, Defendant cannot credibly dispute that a test set to 200 lbs is now the proper testing standard. As stated in its moving papers, Rand International has sold thousands of its Scooters in connection with a number of different licenses. This includes the sale of 33,000 units of this very same Scooter, manufactured to 100 pounds, to Toys R Us under the Batman logo. (Worksman Mov. Dec. ¶ 48).

Moreover, Defendant's claim that the Scooter had multiple failures for multiple reasons (Def. Mem. at 10) is disingenuous. The other failures to which Defendant refers (*i.e.* "permanent deformation" and "sharp edge") (Def. Mem. at 3) occurred only because the scooter was tested to the incorrect weight. (Reply Dec.¶ 6). This is consistent with the multiple passing test certifications the Scooter has received when tested at the correct 100 lb test and the fact that Toys-R-Us has repeatedly ordered and sold the same Scooter. (Worksman Mov. Decl. ¶48-49) In fact, that the issue with the Scooter was merely a pretext for termination is also illustrated by LucasFilm's recent position, that it would allow Rand International to continue to ship Star Wars Scooters to Wal-Mart. (Worksman Dec., Exs. C.25, F; *see also* Ex. F, Section 5(a). If there was

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 6 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

1  truly a safety concern over the Scooter product, why would LucasFilm be willing to continue to
2  allow any product to be shipped?
3        With respect to the Bicycle, as stated above, after receiving three passing
4  certifications from three independent testing facilities, Rand International has just learned that
5  there may be an issue of lead with regard to the fork of the bicycles manufactured by a Chinese
6  company Liwang Bicycles. (Reply Dec. ¶ 15). However, any such problem is curable for the
7  following important reasons. First, Rand International purchases bicycles from a number of
8  overseas manufacturers. (Id. ¶ 64). There has never been an issue with bicycles from these other
9  companies and there is no safety reason preventing Rand International from shipping the bicycles
10  it has ordered from these other companies.[3]

      **2.    Any Defects Found in the Bicycles Can Be Cured**

12        Second, the bicycles from Liwang have not entered the stream of commerce. Upon
13  learning of the lead issue in June, Rand International took the responsible step of having all of
14  those bicycles quarantined so that they can be tested. (Reply Decl. ¶ 14). When Rand
15  International obtained additional tests from other independent testing bureaus (using the same
16  tests which scraped paint from several components), which came back negative, Rand
17  International did not immediately ship the products, but ordered additional component testing, the
18  results of which it just received. (Id. ¶ 15). These actions of quarantine and testing belie the
19  claim by Defendant that Rand International has not done anything to investigate the cause of the
20  issue. Third, the issue with the Liwang bicycles is curable. Rand International can either (i)
21  cause the limited inventory of Liwang bicycles to be destroyed or (ii) remove the fork and
22  replace it with a fork that has no issues.

      **3.    Defendant's Reference to Past Recalls by Rand International Is Irrelevant to the Issues in This Case**

      LucasFilm raises two new arguments in its opposition papers, which were not part

---

[3] Defendant attempts to paint the picture that Rand International is somehow a shoddy company since it has bicycles manufactured in China. That in fact is the industry standard for these types of children's bikes. Indeed, Pacific Cycle and Huffy (cited by Toys "R" Us) also manufactures bikes in China.

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 7 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

1  of its June 18th termination letters, seeking to show that Rand International has a pervasive history
2  of product failures which justified termination. (Def. Mem. at 6).

3  First, LucasFilm claims of "repeated" test failures is false. In fact, the only other
4  test failure substantively addressed in LucasFilm's opposition relates to a failed helmet test.[4] On
5  that issue, Defendant conclusorily claims, that on May 27, 2008 it learned that "Star Wars
6  branded helmets manufactured by Rand were unsafe." (Def. Mem. at 2). However, as Plaintiff
7  explained in its moving submission, the only reason the helmet failed Toys "R" Us' test was
8  because it lacked an updated certification. This updated certification was promptly obtained from
9  Intertek, showing that the helmet is, and always was, a safe product. (Worksman Mov. Decl. §
10  72). If LucasFilm truly felt the helmet presented a safety issue and constituted a basis to
11  terminate the contract, it would have raised the issue in its June 18, 2008 letter. It did not do so.
12  Nor could it, as the issue was already resolved by then. Accordingly, the isolated helmet issue
13  does not support Defendant's allegation that Rand International has pervasive safety product
14  issues. (Def. Mem at iv).

15
16  Second, LucasFilm's new accusation that Rand has a "deplorable safety record"
17  and "a long history of introducing products into the marketplace that are dangerous" is just not
18  the case. (Reply Decl. ¶ 23-27). Defendant cites to three isolated incidents in Rand
19  International's thirty year history, one of which occurred over twenty years ago. (Beyer Dec. Ex.
20  3, 4, 5). As an initial matter, these isolated events which occurred years ago have no bearing on
21  whether Rand International's products are currently safe. See, e.g., Lewy v. Remington Arms
22  Co., Inc., 836 F.2d 1104, 1109 (8th Cir. 1988)(evidence of prior defects or recalls relating to other
23  models or products is not relevant to show that the product in question is defective.) More
24  importantly, the cited events were long ago, contained and not related to what is at issue here. In

---

[4]  Defendant's submission makes a single reference that "[a] Star Wars Skateboard also failed a BV test based on failure to include a date code sticker required by TRU." (Def. Mem. at 3) but notably does not elaborate on that test or explain how such a failure would implicate safety. As Plaintiff explained in its moving papers, that failure did not in fact implicate any safety concerns and moreover, was immediately remedied. (Worksman Mov. Dec. ¶ 71). Defendant also did not raise this issue in its June 18, 2008 letter, likely realizing that such a trivial failure would not justify the extreme measure of termination.

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 8 -

MEM. POINTS AND AUTH. ISO
APPLICATION FOR TRO

1   the recent past, Rand International has not had *any* incidents of safety issues (Reply Dec.¶ 26) and

2   numerous retailers have recognized Rand International for the quality of its products over the

3   years. (Id.) [5]

4   In addition, these instances are not relevant to the issue at hand, which is whether

5   Defendant's termination on June 18, 2008 was justified. LucasFilm admits in its opposition that

6   it only recently discovered this information. Thus, it could not have been a basis for LucasFilm's

7   termination. Further, LucasFilm's willingness to enter into an agreement with Rand International

8   to license its products belies its position that Rand International has a known history and

9   reputation for "deplorable" safety. In fact, if Rand International's reputation for safety was as

10  poor as Defendant claims, Rand International would not have been able to successfully sell its

11  products to the largest retailers in the country for the last 30 years, let alone have numerous

12  licensors, *including* LucasFilm, agree to let Rand International distribute products in their name.

13  **B.    LucasFilm's Termination Was In Contravention of Section 14 of the Agreement; Any Breach Was Either Not Material, Or Was Curable and In Fact Cured**

14

15  Defendant's opposition also ignores the terms of the agreement it signed. On this

16  point, Defendant's only contention is that Paragraph 14 "permitted LucasFilm to terminate the

17  Agreement if Rand International breached any material term or condition." (Def. Mem. at 7).

18  However, the termination provision in Section 14 is not so broad. In fact, contrary to

19  LucasFilm's position, the License Agreement only sets forth limited circumstances under which

20  LucasFilm has the ability to validly terminate the License Agreement. (Worksman Mov. Dec.,

21  Ex. A, §14.) Under Section 14.2.1(d), which Defendant invoked as the basis for its termination,

22  in order for Defendant's termination to be justifiable, the breaches would have to be (a) material

23  and (b) incurable. (Id.) Here, even if there is a debate as to whether the breaches were material[6],

---

[5]   Accordingly, to the extent Defendant argues that denial of injunctive relief would be in the public interest, this argument is without merit. (Def. Mem. at 15)("Rand's request for a court order that it be allowed to sell children toys…even though it has never demonstrated good manufacturing practices with respect to safety, would not be in the public interest). Defendant's exaggerated claim that Rand has never demonstrated good manufacturing practice is unsupported, and in fact contradicted, by the evidence.

[6]   Plaintiff submits that the June 10, 2008 Test failures were not breaches at all (See Point A) let alone material breaches. See Rano v. Sipa Press, Inc., 987 F.2d 580 (9th Cir. 1993)

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 9 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

Defendant cannot credibly contend that the breach was incurable.

A breach is only incurable if "the harm has already occurred and any effort to reverse it is ineffectual." Raymond T. Nimmer & Jeff Dodd, Modern Licensing Law § 11:7 (2007). In contrast, a breach is "curable" if a party has the ability to "correct the deficiency in performance." Anacapa Technology, Inc. v. ADC Telecommunications, Inc., 241 F. Supp. 2d 1016, 1020 (citing E. Allan Farnsworth, Farnsworth on Contracts § 8.17.) In Anapaca, for example, the Court found that the defendant could not force the plaintiff to forfeit its right under the contract by terminating it because the plaintiff had cured its material breach. Although the defendant, like LucasFilm, argued that the breach was incurable, the court rejected that argument since the plaintiff did in fact cure. As such, the court found that the "breach was curable as a matter of law." Id., n. 3. Similarly, to the extent there was any breach, Rand did in fact cure. Thus, even if there were defects with the Bicycle and Scooter-which there were not for the reasons set forth above- Defendant's termination was still improper under the provisions of 14.2.1(d) because any breach was curable as a matter of law.

### C. Also Without Merit is Defendant's Position That It Gave Rand International Opportunity To Cure, And That Rand International Failed to Do So

LucasFilm's position on cure is entirely inconsistent. First, both in its June 18, 2008 letter and in its opposition, LucasFilm claims that the alleged breaches were incurable. (Def. Mem. at 11; Worksman Mov. Dec., Ex. B). As discussed above, this is an unsupportable position. In any event, despite its previous stated position that the breaches were incurable, Defendant now claims it did in fact give Rand International an opportunity to cure but that Rand International failed to do so. (Def. Mem. at 11). This position is equally unavailing. Defendant claims that Rand International failed to cure because "five days after the termination letter" it

---

Sunstone Behavioral Health, Inc. v. Alameda County Medical Center, 2008 WL 2510876 (E.D. Cal. June 19, 2008); Fantasy, Inc. v. Forgerty, 984 F. 2d 1524, 1529-1530 (9th Cir. 1993)(finding breach was immaterial as a matter of law). Indeed, and of particular applicability here, is the well settled principle that a court will not find a material breach where doing so would cause the breaching party to suffer severe forfeiture. Id. However, it is ultimately irrelevant whether or not the breaches were material, because even material breaches do not justify termination under the License Agreement unless they are incurable.

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 10 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

denied that there was any breach in the first place. (Id.) This position makes no sense, but more importantly ignores the subsequent events that transpired during the remainder of the cure period. This includes the almost daily communication between LucasFilm and Rand International regarding Rand International's efforts to demonstrate there were no product defects. From its receipt of the June 18, 2008 letter, Rand International immediately commenced investigation into the test failures, and immediately produced to LucasFilm evidence that its products were safe. (Id. ; Reply Decl.¶ 12). Thus, Defendant's assertion that Rand International "affirmatively declined the opportunity to cure" (Def. Mem. at 11) is false.[7] More importantly, Rand International produced this evidence within the twenty day cure period, another fact which LucasFilm simply ignores in its opposition. As of June 30, 2008 the products at issue all had passing test results from Intertek Labs. (Worksman Mov. Decl. ¶ 86). Thus, Plaintiff cured within the allotted time frame. For that reason, Defendant's position that "Rand never addressed [Defendant's] stated concerns" (Roffman Dec. 22, 25; Anderson Dec. 23-26; Anderman Dec 2) is just wrong. In fact, in the course of the past two months, Rand International sent Defendant multiple letters or communications on this very issue. (Worksman Mov. Decl., Ex. C). Defendants simply ignored the answers and explanations that Rand International provided.

### D. Defendant Ignores Rand International's Claim That The Demand to Recall All Products Was a Breach of the License Agreement

Defendant's demand in its June 18, 2008 letter that Rand International recall every single product was a clear breach of Section 4.6 of the License Agreement. Defendant fails to address Plaintiff's claim of breach on this basis. Defendant was only permitted to institute a recall on products Defendant *reasonably* suspects to be defective. (Worksman Mov. Decl. Ex. A, §4.6.) As discussed in Plaintiff's moving submission, while the Toys "R" Us Tests only

---

[7] Also false is Kristina Anderson's claim that "Rand did not reply to [her] emails" when she attempted to address the June 10, 2008 test results and that Rand's failure to respond to an email sent on June 17, 2008 left LucasFilm no choice but to send the June 18, 2008 termination letter. (Anderson Dec. 18-19). In fact, from June 10, 2008, up until 5 pm the day before LucasFilm terminated, Rand International and LucasFilm were in constant communication about these issues. (Worksman Reply Decl. ¶¶ 18, Ex. C). Further, although Ms. Anderson claims Rand International never replied to her June 17, 2008 email, it did so in several communications that day, starting with a reply sent within the hour of the email. (Id.)

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 11 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

showed issues with two products, Defendant demanded recall of *all* licensed products. (Id. Ex. B.) This demand was unreasonable and therefore in breach of Section 4.6 , in light of: (1) Rand International's history of providing safe products to the market, including the very same products Defendant's demanded be recalled; and (2) Rand International's demonstration after June 18, 2008 that the other products which Defendant was attempting to recall or prevent distribution of were products safe and properly certified. (See Plaintiff Mem. at 9; Worksman Mov. Dec., ¶75.)

Defendant for the first time now argues that it was also entitled to terminate based on Rand International's purported "refusal to recall product that LucasFilm reasonably suspected was defective" and "because Rand sold product under the Star Wars brand without authorization." (Def. Mem. at iv) This position is wrong. Rand International has complied with the recall, and has not distributed its products to the market, at great cost to its reputation and financial health. (See Point G below.) With respect to Wal-Mart, LucasFilm was not only aware that Rand International was supplying Wal-Mart with the product, Defendant approved it. (Reply Decl. ¶ 35). Thus, Plaintiff will also be able to demonstrate that Defendant breached the License Agreement by unreasonably demanding recall of all products and that Defendant's wrongful recall has caused great harm to Rand International, including in its relationship with its customers who had already placed orders for the goods.

### E. Rand International Is Likely To Prevail On the Merits Its Tortious Interference Claim

Defendant claims in its opposition that the termination of an existing contract according to its own terms cannot give rise to a claim of tortuous interference.. (Def. Op. at 12) (citing Major League Baseball Promo. Corp. v. Colour-Tex Inc., 729 F.Supp. 1035 (D.N.J. 1990)(applying New Jersey law). This position, of course, ignores the fact that Defendant did not terminate the contract according to its own terms, and rather, that Defendant's termination was wrongful. Further, unlike in Major League, here Plaintiff claims, and the evidence shows, that Defendant improperly interfered with Rand International's relationship with its customers also by disseminating misleading information about the safety of Rand International's products. Defendant also argues that even if the termination of the Agreement was wrongful – which it was

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 12 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

– the interference was justified to prevent the delivery of defective products. As the facts demonstrate, however, Defendant's concern for the public safety was pretextual. Moreover, Defendant demanded recall of products for which there was no reasonable basis to believe were defective. Accordingly, for the reasons set forth in Plaintiff's moving memorandum of law, Plaintiff has established a likelihood of success on its tortuous interference claim.

### F. Rand International Is Likely To Prevail On the Merits of Unfair Business Practices Claim Under Cal. Bus. Code §7200

As set forth in Plaintiff's moving memorandum, Defendant's wrongful termination of the Agreement, its tortuous interference with Rand International's contracts, and its dissemination of misleading information violated unfair business practices under Cal. Bus. Code § 17200. Defendant does not dispute that a breach of contract and tortious interference are valid predicates to a 17200 claim. Instead, Defendant's only response to Plaintiff's showing that it is likely to succeed on its 17200 claim is a misplaced attempt to invoke the heightened pleading standard of Fed.R.Civ.P. 9(b) for this claim. (Def. Mem. at 12). Defendant however is wrong that such a standard applies here. See In re Pomona Valley Medical Group, Inc., 476 F.3d 665, 674 (9th Cir. 2007)(the term 'fraudulent' under § 17200 "does not refer to the common law tort of fraud," instead, the plaintiff is only required to plead that "members of the public are likely to be deceived."). Thus, for the reasons set forth in Plaintiff's moving memorandum of law, Plaintiff has established a likelihood of success on its unfair business practices claim.

### G. Rand International Will Suffer Immediate And Irreparable Harm If It Does Not Receive Immediate Injunctive Relief

In its submission, Defendant mischaracterizes the nature of the harm Rand International faces if Defendant is not enjoined. The harm Rand International faces goes far beyond merely lost revenues as Defendant maintains. Rand's inability to distribute the products it has spent over $-- million purchasing, coupled with retailers now refusing to do business with Rand International as a result of LucasFilm's termination, could put the company out of business.

Further, contrary to Defendant's argument, Rand International's claim of imminent, and irreparable harm to its reputation and good will is not speculative. Indeed, in just the four days since Rand International filed its papers, it has endured even more damage to its

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 13 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

reputation as well as future business. (Reply Dec., Ex. B). K-mart has now affirmatively stated it " will not purchase Rand products anytime in the foreseeable future."[8] "Such damage would be difficult to quantify and therefore constitutes possible irreparable harm." Pacific Rollforming, 2007 WL 3333122, at *3. More importantly, this damage will "not be repairable should a court later determine that good cause does not exist to terminate the [agreement]." Everything Cycles, 2007WL3171253 at*5.

Defendant also argues that Rand's reputation cannot be damaged because "Rand's reputation for safety…does not have far to fall." (Def. Mem. at iv). This is absurd. If Rand International's reputation was as poor as Defendant claims, Rand International would not have been able to successfully sell its products to the largest retailers in the country for the last 30 years, let alone have numerous licensors, *including* LucasFilm, agree to let Rand International distribute products in their name. Contrary to Defendant's assertion, Rand International has run a successful business on the basis of its reputation for quality products  If that reputation is impaired, the harm will be irreversible.

Finally, the case law which Defendant relies on fails to support of its argument that Rand International is not entitled to injunctive relief. (Def. Mem at 13) (citing Goldie's Bookstore, Inc. v. Sup. Ct. of Cal., 739 F.2d 466 (9th Cir. 1984) and Big Country Foods, Inc. v. Bd. of Educ., 868 F.2d 1085 (9th Cir. 1989). In Goldie's Bookstore, the Court held that it could not grant an injunction based on loss of goodwill and "untold" customers because it was not based on any factual allegations. 739 F.2d at 472. Here, however, Rand International has already lost K-Mart as a customer and will most likely lose other customers if it cannot provide them with STAR WARS products. Big Country Foods, is likewise inapplicable. In that case, the Court did not enjoin the defendant because there was no evidence that the contract would have been profitable. 868 F.2d at 1088. In contrast, here, there can be little doubt that the Agreement would be profitable for Rand International.  By the defendant's own admission, "global retail

---

[8] Defendant, in its opposition, also argues that Rand International has failed to produce evidence that it had any orders, "let alone the amount of such orders or the amount of profits it would realize if such orders were placed." This is untrue.(Worksman Mov. Dec.¶ 98).

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 14 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

sales of Star Wars merchandise currently exceed $15.5 billion. Star Wars is one of the three most valuable entertainment franchises in the world." (Roffman Dec. ¶ 4.) Moreover, Rand International forecasted that it would receive $12 million in revenues by year end from STAR WARS products, including $9 million dollars from firm orders that were already placed prior to the defendant's purported termination of the Agreement. (Worksman Mov. Dec. ¶ 95.)

Finally, Defendant argues that it is doubtful that Rand International will be forced out of business because it contends Rand International "could sell its inventory by simply re-labeling the products." This suggestion by Defendant not only inaccurate, but also unrealistic if Rand International's reputation and good will are irreparably damaged. The termination of the Agreement along with Defendant informing retailers that the Agreement was terminated based on safety failures, would jeopardize Rand International's relationship with its customers beyond repair and Rand International would be forced to discard its entire inventory. Accordingly, Rand International will be irreparably harmed if it is not granted injunctive relief..

### H. The Balance Of Hardships Strongly Weighs In Rand International's Favor

Defendant's argument that the equities do not weigh in favor of Rand International is based on its contention that the harm to Plaintiff is speculative. As discussed above, this is wrong. The harm to Plaintiff is real and has already begun to take place.[9] Defendant's claim that its will be severely harmed by being associated with Rand International's products is not credible for the reasons discussed above. In fact, Defendant does not dispute that with the deployment of the marketed products, it would enjoy a stream of license royalties based firm commitments from Rand International's safe product, up to $1.2 million in royalties by year end of 2008, and $2.7

---

[9] Defendant argues that the harm to Rand International should be disregarded as "self inflicted" and a result of a purported delay in seeking relief. (Def. Mem. at 15). However, Defendant's ignore that since receiving LucasFilm's June 18, 2008 letter purporting to terminate the License Agreement, Rand International has spent the last two months actively seeking to resolve the dispute with LucasFilm without resort to litigation. Under such circumstances, any delay in seeking injunctive relief is not undue or unreasonable. e-bay, Inc. v. Bidder's Edge, Inc., 100 F.Supp.2d 1058, 1067-68 (N.D. Cal. 2000). In eBay, this Court found that plaintiff's delay of *two years* before seeking injunctive relief did not rebut a finding of irreparable harm, where the delay resulted from plaintiff's "good faith efforts to resolve this dispute without judicial intervention." Id. at 1068; CyberMedia, Inc. v. Symantec Corp., 19 F. Supp. 2d 1070, 1078 (N.D. Cal. 1998); Guess?, Inc. v. Hermanos, 993 F.Supp. 1277, 1286 (C.D. Cal. 1997).

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 15 -

MEM. POINTS AND AUTH. ISO APPLICATION FOR TRO

million royalties by the end of 2009.  (Worksman Decl. ¶103).

## **Conclusion**

For the foregoing reasons, Rand International respectfully requests that is application be granted in all respects.

Dated:  August 20, 2008

BUCHALTER NEMER
A Professional Corporation


By: _____/s/_____
RICHARD C. DARWIN
Attorneys for Plaintiff
RAND INTERNATIONAL, INC.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- 16 -

MEM. POINTS AND AUTH. ISO
APPLICATION FOR TRO

**TABLE OF CONTENTS**

**Page**

STATEMENT OF FACTS ..................................................................................................................5

ARGUMENT ....................................................................................................................................5

I. RAND INTERNATIONAL HAS ESTABLISHED ITS ENTITLEMENT TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION PENDING RESOLUTION OF THIS DISPUTE .......................................5

    A. Rand Has Established A Likelihood of Success On the Merits On Its Breach Of Contract Claim ..................................................................................5

        1. Defendant's Termination With Respect to the Scooter Was Without Basis ...................................................................................5

        2. Any Defects Found in the Bicycles Can Be Cured ....................................8

        3. Defendant's Reference to Past Recalls by Rand International Is Irrelevant to the Issues in This Case..........................................................8

    B. LucasFilm's Termination Was In Contravention of Section 14 of the Agreement; Any Breach Was Either Not Material, Or Was Curable and In Fact Cured ....................................................................................................10

    C. Also Without Merit is Defendant's Position That It Gave Rand International Opportunity To Cure, And That Rand International Failed to Do So ...............................................................................................................11

    D. Defendant Ignores Rand International's Claim That The Demand to Recall All Products Was a Breach of the License Agreement ..........................................12

    E. Rand International Is Likely To Prevail On the Merits Its Tortious Interference Claim .........................................................................................13

    F. Rand International Is Likely To Prevail On the Merits of Unfair Business Practices Claim Under Cal. Bus. Code §7200.........................................................14

    G. Rand International Will Suffer Immediate And Irreparable Harm If It Does Not Receive Immediate Injunctive Relief .........................................................14

    H. The Balance Of Hardships Strongly Weighs In Rand International's Favor ........16

CONCLUSION ...............................................................................................................................17

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- i -

MEM. POINTS AND AUTH. ISO EX PARTE APPLICATION FOR TRO

## TABLE OF AUTHORITIES

### CASES

Anacapa Technology, Inc. v. ADC Telecommunications, Inc., 241 F. Supp. 2d 1016 (citing E. Allan Farnsworth, Farnsworth on Contracts § 8.17.) ........................... 6

Big Country Foods, Inc. v. Board of Education, 868 F.2d 1085 (9th Cir. 1989) ........ 10, 11

CyberMedia, Inc. v. Symantec Corp., 19 F. Supp. 2d 1070 (N.D. Cal. 1998) ................... 11

Fantasy, Inc. v. Forgerty, 984 F.2d 1524 (9th Cir. 1993) ...................................................... 5

Gilder v. PGA Tour, Inc., 936 F.2d 417 (9th Cir. 1991) ..................................................... 11

Goldie's Bookstore, Inc. v. Sup. Ct. of Cal., 739 F.2d 466 (9th Cir. 1984) ....................... 10

Guess?, Inc. v. Hermanos, 993 F. Supp. 1277 (C.D. Cal. 1997) ........................................ 11

In re Pomona Valley Medical Group, Inc., 476 F.3d 665 (9th Cir. 2007) .......................... 9

Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................. 11

Lewy v. Remington Arms Co., Inc., 836 F.2d 1104 (8th Cir. 1988) .................................. 4

Major League Baseball Promo. Corp. v. Colour-Tex Inc., 729 F. Supp. 1035 (D.N.J. 1990) ........................................................................................................................ 8

Pacific Rollforming, 2007 WL. 3333122 ............................................................................ 10

Rano v. Sipa Press, Inc., 987 F.2d 580 (9th Cir. 1993) ....................................................... 5

Schrier v. University of Colo., 427 F.3d 1253 (10th Cir. 2005), cited by Defendant ..... 1, 4

Sunstone Behavioral Health, Inc. v. Alameda County Medical Center, 2008 WL. 2510876 (E.D. Cal. June 19, 2008) ............................................................................. 5

### STATUTES

Fed.R.Civ.P. 9(b) ...................................................................................................................... 9

KELLEY DRYE & WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

NY01/GLATE/1302639.3
BN 2198137v1

- ii -

MEM. POINTS AND AUTH. ISO EX PARTE APPLICATION FOR TRO