United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAND INTERNATIONAL, INC., | |
| Plaintiff, | No. C 08-03897 JSW |
| v. | |
| LUCASFILM LTD., | **ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| Defendant. | |

Now before the Court is the *ex parte* application for a temporary restraining order filed by Plaintiff Rand International, Inc. ("Rand"). Having considered the parties' arguments, relevant legal authority, and having had the benefit of oral argument, the Court DENIES Rand's application for a temporary restraining order enjoining LucasFilm, Ltd. ("LucasFilm") from terminating the License Agreement between the parties.

**BACKGROUND**

In October 2007, Plaintiff Rand, a manufacturer of toy products, entered into a License Agreement with Defendant LucasFilm which granted Rand a non-exclusive license to sell children's bicycles, scooters, and similar products with the well-known Star Wars and Clone Wars properties affixed to them. (*See* Declaration of Mark Worksman ("Worksman Decl."), Ex. A.) The License Agreement required that Rand follow good manufacturing practices and comply with applicable safety rules and regulations. The Agreement permitted immediate termination for breach of a material term that was incurable, and further allowed for termination subject to cure, if the breach were curable and cured within twenty days of notice.

On June 18, 2008, LucasFilm sent a letter seeking to terminate the License Agreement after it had received notice from Toys R Us that two of the products manufactured by Rand, a bicycle and a scooter, had failed safety tests by Bureau Veritas, an independent testing agency. (*Id*., Ex. B.) The letter indicated that a bicycle that had been distributed to Toys R Us failed the lead paint tests performed by Bureau Veritas. The letter also indicated that the scooter failed several dynamic strength tests. The record is replete with correspondence between the parties after that date: from Rand, indicating that the tests were invalid and somehow politically motivated and from LucasFilm indicating that it still perceived the products to be unsafe. Rand contended that the lead test was invalid because it demonstrated that the lead paint levels were uniform throughout parts manufactured and painted at different sites. Rand also maintained that the dynamic strength testing on the scooter was improper because it failed to limit the passenger to the 100-pound weight limit indicated in the scooter's manual.

On August 14, 2008, Rand moved this Court to enter a temporary restraining order enjoining LucasFilm from terminating the License Agreement and mandating that LucasFilm permit the distribution of Rand products under the agreement. On August 19, 2008, LucasFilm opposed the application. On August 20, 2008, Rand replied and stated for the first time that indeed their own independent lead paint testing had revealed potential problems on the fork of the bicycle. The Court heard oral argument on the application on August 22, 2008.

## ANALYSIS

**A.    Applicable Legal Standards.**

To prevail on a motion for temporary restraining order or to receive preliminary injunctive relief, the moving party bears the burden of demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions as to success on the merits and irreparable injury along with a sharp tipping of the balance of hardships in favor of the moving party. *Stahlbarg International Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-840 (9th Cir. 2001). These alternative standards are "not

2

separate tests but the outer reaches of a single continuum." *International Jensen, Inc. v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir. 1993).

"Because injunctive relief prior to trial is a harsh and extraordinary remedy, it is to be granted sparingly and only in cases where the issues are clear and well defined and the plaintiff has established a reasonable certainty of prevailing at trial." *Watermark, Inc. v. United Stations, Inc.*, 219 U.S.P.Q. 31, 32-33 (C.D. Cal. 1982) (*citing Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141 (9th Cir. 1964)). Moreover, "on application for preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Dymo Industries*, 326 F.2d at 143; *see also Mayview Corp. v. Rodstein*, 480 F.2d 714, 719 (9th Cir. 1973) (reversing grant of preliminary injunction based on existence of disputed factual issues).

As an "irreducible minimum," the moving party must demonstrate "a fair chance of success on the merits" or "questions ... serious enough to require litigation." *Sports Form, Inc. v. United Press Intern., Inc.*, 686 F.2d 750, 753 (9th Cir. 1982) (citations omitted). If the moving party fails to show any chance of success on the merits, a court need not determine whether there is potential injury or balance the hardships. *Id*.

In addition, within the Ninth Circuit, the Court must also consider the public interest when it assesses the propriety of issuing an injunction. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

**B.     Rand Fails to Demonstrate Probable Chance of Success on the Merits.**

Rand fails to demonstrate either that it has a probable chance of success on the merits or that it will suffer irreparable injury as a result of the denial of its application for a restraining order. Rand has not shown that it is likely to succeed on the merits of its claim that LucasFilm improperly terminated the License Agreement. The Agreement required that Rand follow good manufacturing practices and comply with applicable safety rules and regulations. (Worksman

3

Decl., Ex. A.) It is clear from the record before the Court that at least two of the licensed products manufactured under Rand's supervision failed to meet industry safety standards.[1]

In its notice terminating the Licensing Agreement dated June 18, 2008, LucasFilm indicated that it found Rand in default under the agreement because it had recently received test results from an independent testing agency indicating that the Star Wars Clone 16" bike failed with respect to acceptable lead paint and heavy metal content levels and the Star Wars scooter product failed in the areas of component failure and strength testing. (*Id.*, Ex. B.) LucasFilm indicated its intention to terminate the License Agreement for violation of paragraphs 4.4 and 10.2(e) of the agreement.

Paragraph 4.4 of the Licence Agreement, in relevant part, provides:

> Licensee shall ensure that the form, quality and standard of all materials used in the connection with each Licensed Product conform to that of the samples approves by Licensor pursuant to this agreement and complies with all good manufacturing practices relevant to any Licensed Property and/or Licensed Products ... and with all laws and regulations relevant to any Licensed Product(s).

Paragraph 10.2(e) of the License Agreement, in relevant part, provides:

> Licensee represents and warrants that: it and other others authorized by it or acting on its behalf will comply at all times hereunder with all applicable laws, rules and/or regulations relating, affecting or pertaining to the use of any Licensed Property ... and to all applicable laws, rules and/or regulations relating, affecting or pertaining to the ... manufacture, ... safety and/or use of each and every unit of a Licensed Product sold hereunder.

Having received test results indicating that Rand's products were not safe due to lead paint content and dynamic strength testing, LucasFilm was within its rights to terminate the contract. The failed test results, at least preliminarily, demonstrate failure to comply with all good manufacturing practices and compliance with applicable laws, rules and regulations pertaining to every licensed product as required under the agreement.

Under paragraph 14.2.1(d) of the Agreement, LucasFilm had an immediate right to terminate the agreement where the "Licensee breaches any other material term or condition of

---

[1] The record also indicates that LucasFilm was aware of test failures for others of Rand's products, including helmets, but the bases in the notice of termination of the License Agreement and the majority of the evidence before the Court focuses on the bicycle and the scooter products, and so the Court has similarly so focused its review.

4

this Agreement which breach is of an incurable nature." There is nothing in the record by which the Court can make the determination that the safety testing failures were breaches of a curable nature. Neither party indicates whether the breach of the terms warranting quality manufacturing or compliance with all applicable laws is, in fact, a curable breach of the contract.

The License Agreement is silent as to the definition of "curable" and "incurable." Upon further examination, the Court could find that a breach which threatens public health or safety, or threatens to do significant harm to the Licensor or its commercial reputation, may, in fact, render such breach incurable. This case is not in a procedural posture that would enable this Court to make such a determination regarding the legal definition of these contractual terms. However, Rand, whose burden it was to persuade the Court that it had a probable likelihood of success on the merits has not met its burden to demonstrate that the breaches were indeed curable or, if they were, that they were in fact cured within the requisite time.

Even assuming that the failing of the safety tests was a curable breach, the License Agreement provides that LucasFilm had a right to terminate subject to cure. Paragraph 14.2.2(b) provides that LucasFilm had the right to terminate the agreement if the Licensee "breaches any other material term or condition of this Agreement which breach is of a curable nature, provided, that Licensee has failed to cure any such breach within twenty (20) days ... after written notice of breach from Licensor." There is nothing in the record indicating that Rand provided a sufficient cure for breaching the terms warranting quality manufacturing or compliance with all applicable laws within the twenty-day period required by the parties' agreement. In his supplemental declaration, Mark Worksman indicates that Rand immediately contacted the questionable manufacturer and started retesting. (Supplemental Declaration of Mark Worksman, ¶¶ 11, 12.) Mr. Worksman also states that Rand informed LucasFilm that they "would quarantine the bikes." (*Id.*, ¶ 14.) On August 20, 2008, the date of Mr. Worksman's supplemental declaration, he also indicates that, for the first time, Rand was advised by yet another independent testing agency that there could be a lead paint problem with the fork of the bicycles. (*Id.*, ¶ 15.) At oral argument on this application, Rand's counsel

5

argued that the subject bicycles had never entered the stream of commerce and that Rand stood ready to deliver compliant bicycles and replace the lead-painted parts of the specific bicycles identified as a problem. However, it is clear from the record before this Court that at least one affected bicycle had already entered the stream of commerce. This bicycle was the one held by Toys R Us and originally tested by Bureau Veritas. There is no evidence in the record pertaining to the status of the rest of the bicycles from that original shipment to Toys R Us. There is no evidence in the record demonstrating that the alleged quarantine occurred within twenty days of the initial termination of the license. There is no evidence in the record specifically attesting to the lead content on every bicycle manufactured under Rand's supervision. Additionally, the fact that an independent testing agency did not have the manual for the testing of the scooter weight limits indicates that the failure to have the proper labeling on the product itself may render the scooter unsafe. It appears from the evidence before the Court that, to the extent the failed safety tests constituted breaches that are curable, Rand has not cured them to the satisfaction of LucasFilm. To the extent the breaches of the Licensing Agreement may cause damage to LucasFilm's commercial reputation, again, the Court is unclear whether such breaches are, in fact, curable.

**C.      Rand Fails to Demonstrate Irreparable Injury.**

The Court finds that Rand also fails to satisfy its burden to demonstrate that it will suffer irreparable injury should the Court deny its request for injunctive relief. The Court is mindful that Rand may lose business and may in fact lose substantial good will and sustain damage to its reputation. However, the Court finds that such damage will result not only from the termination of the Star Wars license from LucasFilm, but also from the market's awareness that Rand's toys did not pass certain safety testing protocols. To the extent that the alleged damage to Rand's reputation and business goodwill is reparable, it is not clear that merely requiring LucasFilm to continue to do business with them will effect that repair. Further, there is evidence in the record that LucasFilm stands to suffer significant damage to its own goodwill and business reputation should the Court require them to continue to do business with Rand. The Court finds that the balance of hardships does not favor Rand, the moving party, and further that the remedy they

seek would not necessarily redress the alleged harm they may face regardless of the Court's intervention.

### D.   Public Interest Factor.

To the extent that the Court must also consider the public interest when it assesses the propriety of issuing an injunction, the Court finds that the public interest is not served in allowing a company to produce children's toys without demonstrating good manufacturing practices with regard to safety.  Although the Court is cognizant that Rand maintains it has and will continue to produce safe toys, the Court cannot find, as a matter of law, that requiring LucasFilm to continue to do business with a toy manufacturer whose products have admittedly failed several safety tests is in the public interest.

## CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Rand's application for a temporary restraining order.

**IT IS SO ORDERED.**

Dated:  August 27, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE